30600. McCLAIN *v.* TRAVELERS INSURANCE COMPANY
*et al.*

DECIDED SEPTEMBER 20, 1944.  REHEARING DENIED OCTOBER 27, 1944.

*Shackelford & Shackelford,* for plaintiff.

*Neely, Marshall & Greene,* for defendants.

SUTTON, P. J.  On December 5, 1942, Frank McClain filed a claim for compensation with the State Board of Workmen's Compensation for an injury to his forefinger, which he claimed he sustained on September 11, 1942, while working for Jefferson Mills No. 2 at Crawford, Georgia.  Travelers Insurance Company was the employer's insurer.  A hearing was had on August 25, 1943, before Director Frank L. Forrester, who, on October 5, 1943, made an award denying compensation to the claimant.  On October 12, 1943, an appeal to a full board was mailed to the State Board of Workmen's Compensation, but was not received and filed until October 14, 1943.  Whereupon, the claimant was notified by the board that his application for review was not filed within the time provided by law, and, therefore, could not be considered by the board, and it was suggested to him that he still had time to file an appeal to the superior court from the award of Director Forrester.  This he did, and the award was affirmed by the superior court.  The plaintiff in error contends that the award is without sufficient competent evidence to support it, and that an award in his favor was demanded by the evidence.

We have read the evidence contained in the record and also the synopsis of the evidence set out by Director Forrester.  We think the director has made a fair statement of the evidence, and we are of the opinion that the findings of fact and the award made by

him are authorized by the evidence. Briefly, the claimant testified that, on September 11, 1942, while he was working for Jefferson Cotton Mills about 10:30 at night getting some quills out of a box, he stuck something in his finger; he looked at his finger and did not see anything, and went on home. On Saturday, the 12th, he went back at 3 o'clock and reported to Mr. Starr that he had a sore finger and thought he had something in it that he got out of that box of new quills; that Mr. Starr told him he could be off until Monday; that he went back to the office Monday morning and stated he had a sore finger and thought he had some brass or steel in it; that he made this statement to the overseer; that he went to work at 3 o'clock and got off at 11 o'clock at night; that his job was doffing, and it was part of his duties to get these quills and use them, and when he put his hand in the box to get the quills he felt something stick him and jerked his hand back and the finger began to hurt him and never did get easy until Dr. Holliday amputated it; that he reported the accident to Mr. Starr, his boss, on Saturday, the 12th, after having been injured on Friday, the 11th; that Mr. Hopkins and Mr. Kenny gave him first-aid treatment; that they washed his finger with alcohol and wrapped it up on Monday; that he went to Dr. Whitley at Crawford two or three days later, told him he had something in his finger, and he examined it and lanced it beside the nail; that he went on a day or two and did not get any better, and went back to the office and reported it again, and they gave him another first-aid treatment; that he did not go to Dr. Whitley any more; that he went home and worked with it himself; that he put a poultice of fat meat on it and found something in it, and when it did not get any better, he took a needle and went down to a darkey's house and the darkey held a lighted match to the point of the needle and burned and sterilized the needle and he, the claimant, picked the object out of his finger; that the finger kept getting worse and worse and he went to Dr. Holliday, who amputated the finger; that he has one finger gone and one finger stiff; that he went back to work at Whitehall at a yarn mill about the first of January.

Dr. J. L. Whitley testified that Frank McClain came to his office, and he remembers that his finger was red and inflamed; that he opened it up and only pure blood came out of it and he dressed it; that was on Sunday, September 13, 1942; that he came back

on the 17th of September and then he finally saw him after the finger had been amputated; that he was at Crawford at the time he saw him in September; if he made any complaint that he had gotten something in his finger, he had no recollection of it; that his records show he was paid $2 by the claimant; that the finger was definitely infected from some cause when he first saw it; that the first time he made any complaint to him about getting something in his finger was about the 26th of October, after he had moved up to Athens, which was after the finger had been amputated; that if McClain had given him any history about getting something in his finger, he would have called the mill and reported it.

Dr. J. C. Holliday testified that Frank McClain came to his office on September 26 and stated he had injured his finger on September 11, that it began to get sore on September 21, and that he, McClain, had removed a piece of brass or something from under the nail; that his finger was swollen down to the second joint, and was very much infected and discharging pus; that he opened it up and told him he would have to go to the hospital and get supportive treatment; that McClain at that time had evidence of systemic infection; that he went to the hospital four or five days later and they soaked the finger and opened it up a little more, X-rayed it, and found that they had to amputate the finger; that it was amputated about the second joint; that the infection continued and involved the knuckle joint, and about that time his condition was such that he could not keep anything on his stomach, and they gave him saline and glucose, and then called Dr. Goss for consultation; that Dr. Goss advised further amputation, and they then took out that knuckle and the infection seemed to subside and he got well; that McClain did not go to the hospital until the 4th of October, at which time the witness attempted to contact Mr. Spray, who he thought was the superintendent of the mill, but did not locate him; that he did contact him later, but he did not know anything about it, and did not give him authority to have anything charged to the mill; that he was acting for Frank McClain in reporting it to the superintendent; that the second amputation was on October 20; that he left the hospital sometime later; that he was able to return to work about December 1, maybe December 15; that his bill is $123, and has not been paid; that he does not know the amount of the hospital bill; that a piece of brass

under the nail might cause an infection like this; that the claimant told him when he first came to him that he had tried to open the finger up; that you can get an infection by an attempted home remedy; that there seemed to be a small incision made near the end; that he was never able to satisfy himself what kind of infection it was; that the injury and disability was all confined to the forefinger of the right hand; that it appeared or seemed to be streptococcus infection; that he was requested to examine the finger and state what caused it and whether it is stiff or not; he answered it is not stiff (referring to the other finger), that it has a little limitation of motion, that he does not know what caused it, that there was nothing wrong with it when he treated his hand—*that* finger was not involved.

H. Bard testified that he was general superintendent of Jefferson Mill No. 2, and that neither the quill claimant brought into court, nor one like it, had ever been used in that mill. He denied that the claimant ever went to him and reported that he had stuck a quill in his finger or received an injury while working at the mill.

J. O. Starr, the claimant's foreman at the mill, testified that Frank McClain came to him one Friday afternoon in September, 1942, and told him he had a bone infection on his finger, and that his finger was mighty sore; that he came back on Saturday and told him his finger was no better, and he told McClain that he could stay off until his finger got better; that he never did complain to him of getting brass or steel in his finger at the mill; and that they had not used that type of quill in their mill, like the one the claimant brought into court.

H. Kenny testified that he was the office manager of Jefferson Mill No. 2, and that to the best of his recollection Frank McClain came into the office to see him on September 21, with his finger done up, and he took the bandage off and bathed it in alcohol; that it was red around the nail and they discussed it, and he told Frank he believed it was a bone felon, and McClain stated he believed it was too; that a few days later he came back and stated he had been to see Dr. Whitley; that the finger had been cut on at the time, and there was nothing he could do except to call the doctor; that on neither visit to Kenny did he make any complaint about getting something under his fingernail while he was at work, although Kenny would have been the one to have made out

the accident report, if he had an accident and was injured at the mill.

H. B. Hopkins, payroll clerk at the mill, testified, that the claimant never at any time complained to him of getting anything in his finger at the mill, but stated that he thought the trouble with his finger was a bone felon.

Dr. R. M. Goss made the following certificate: "This is to certify that on October 20, 1942, Dr. J. C. Holliday called me in consultation to examine Mr. Frank McClain who gives the history as follows: 'September 11, 1942, he stuck something in his finger while at work. This object appeared to be a piece of brass, which Mr. McClain removed himself on September 21. Within two days he saw Dr. L. L. Whitley, who lanced finger. Later, patient consulted Dr. J. C. Holliday, who lanced finger which ·had to be amputated several days later. Finger was amputated just back of second joint.' When I saw Mr. McClain on October 20, he was a very sick man with rapid and weak pulse, temperature 104, and delirious. A blood transfusion was given him and finger was amputated at hand, leaving wound open and packing with iodoform gauze. Patient made a rapid recovery after this, with no other complications except a ' slight stiffness in middle finger, second joint."

In order for an injury to be compensable under the terms of the workmen's compensation act it must have been occasioned by accident arising out of and in the course of the employment. The claimant testified that his finger was injured while he was at work, and while he was in the performance of his duties at the Jefferson Mill, and that he reported the injury to J. O. Starr, his foreman, and also to the other officers at the mill—Bard, Kenny, and Hopkins. All of these officers and employees of the mill testified that the claimant did not report that his finger was injured by a quill while he was working at the mill; but that he reported his finger was sore and he believed the condition of his finger was caused by a bone felon. According to the evidence, he went to consult Dr. Whitley about his finger on September 13, two days after he claimed it was injured, and again on the 17th, but Dr. Whitley testified that to the best of his recollection the claimant did not tell him that he received an injury to his finger from a quill at the cotton mill. Drs. Holliday and Goss did not know

what caused the trouble and infection in the claimant's finger, except by the history and report made to them by the claimant.

An issue of fact, both as to what was the trouble with the claimant's finger (what caused the trouble) and whether a report of an injury to his finger was made to his employer within thirty days from the date of the alleged accident, was raised by the evidence. It was said in *Liberty Mutual Insurance Company* v. *Blackshear,* 197 *Ga.* 334 (28 S. E. 2d, 860) : "In such a case, not only may an issue of fact arise from contradictory evidence, but contrary implications consistent with the testimony may arise from the proved facts; and in still other ways the question of what is the truth may remain an issue of fact despite uncontradicted evidence in regard thereto."

The director found that there was a conflict in the evidence, which raised an issue of fact, that the superior weight of the evidence was with the employer, and that the claimant failed to carry the burden of proving his claim for compensation; and entered an award denying compensation. This award was affirmed by the superior court. It is well-settled law that on an appeal to the superior court from a final decision or award of the State Board of Workmen's Compensation, the findings of fact made by the board within its powers are, in the absence of fraud, conclusive when supported by any competent evidence.

The findings of fact and the award were authorized by the evidence, and the judge of the superior court did not err in affirming the award.    *Judgment affirmed. Felton and Parker, JJ., concur.*